PEOPLE v BROWN

Docket No. 208355. Submitted September 13, 1999, at Grand Rapids. Decided February 25, 2000, at 9:05 A.M. Leave to appeal sought.

Deborah S. Brown was convicted by a jury in the Grand Traverse Circuit Court of the felony of fraudulent retention or use of building contract funds in violation of § 2 of the Michigan builders' trust fund act, MCL 570.152; MSA 26.332. The defendant, a qualifying corporate officer of Home Port Construction Services, Inc., had signed on the corporation's behalf a contract to construct a house for Joyce Fredrickson. The proofs at trial showed that Fredrickson had paid to the corporation the full contract price for the house and that the defendant had withdrawn funds from the corporation's account for her personal use while some of the subcontractors who had worked on the Fredrickson project remained unpaid. The defendant appealed.

The Court of Appeals held:

1. Section 2 of the builders' trust fund act makes it a felony for a contractor or subcontractor engaged in the building construction business to retain or use with intent to defraud any payment received for a specific project for any purpose without first paying subcontractors, laborers, and materialmen who provided labor and materials for the project.

2. The defendant argues that she should not have been bound over for trial because she was not a contractor within the meaning of § 2 of the builders' trust fund act, there was no evidence that she misappropriated the Fredrickson funds, and there was no evidence that she took any funds with an intent to defraud. Because the defendant was a corporate officer of Home Port and participated in the violation of the provisions of the builders' trust fund act, she was properly bound over by the district court for prosecution over the objection that the corporation, not the defendant, was the contractor within the meaning of the act. There was sufficient evidence to establish a basis for the district court's finding of probable cause that the defendant fraudulently retained or used construction funds in violation of the builders' trust fund act, given the

statutory presumption in § 3 of the act, MCL 570.153; MSA 26.333, that the appropriation by a contractor of any money paid for building operations before the payment of money due laborers, subcontractors, and materialmen "shall be evidence of intent to defraud."

3. There was sufficient evidence adduced at trial to support the defendant's conviction. There was sufficient evidence from which the jury could find that the defendant withdrew money from the corporate account at a time that at least one subcontractor for the Fredrickson project remained unpaid and that the money in the corporate account could be identified with the money paid by Fredrickson. The evidence sufficiently established that the defendant personally misappropriated the funds from the corporate account in her status as a corporate officer and was thus subject to prosecution under the builders' trust fund act. There was no need to show that Fredrickson paid any funds to the defendant directly, only that the defendant had misappropriated funds that had been paid to the corporation. The statutory presumption was sufficient to satisfy the intent to defraud element.

4. The trial court did not abuse its discretion in denying the defendant's motion for a new trial based on the claim that the verdict was against the great weight of the evidence. The weight of the evidence arguments parallel the sufficiency of the evidence arguments and are rejected for the same reasons.

5. The trial court's instructions to the jury, when read as a whole, sufficiently protected the defendant's rights and fairly presented the issues to the jurors. The jurors were informed that the defendant could not be found guilty unless she acted to cheat or deceive. The court's use of the language of the statute concerning the presumption of an intent to defraud was proper, inasmuch as the court also instructed the jury that it was not required to draw the conclusion set forth in the statutory presumption.

6. The trial court properly admitted evidence concerning both the corporation's and the defendant's financial difficulties on the bases that such evidence was relevant both to the showing of the defendant's intent to defraud and to the establishing of the defendant's motive to defraud.

7. The failure of the builders' trust fund act to define "contractor" and "appropriation" does not lead to any due process concerns, because the act is clear concerning the behavior that is prohibited and the defendant should have known that she would be criminally responsible if she, as a corporate officer, caused the corporation to violate the provisions of the act.

Affirmed.

CRIMINAL LAW — UNLAWFUL RETENTION OR USE OF CONSTRUCTION FUNDS — COR-
PORATE OFFICERS.

 A corporate officer of a building construction business who, with the
intent to defraud, participates in the retention or use of the pro-
ceeds of a particular project without first having paid laborers, sub-
contractors, or materialmen who performed labor or supplied
materials for the project for which the proceeds were received can
be held criminally liable under the provisions of the builders' trust
fund act for participation (MCL 570.152; MSA 26.332).

*Jennifer M. Granholm,* Attorney General, *Thomas
L. Casey,* Solicitor General, *Dennis LaBelle,* Prosecut-
ing Attorney, and *Alan Schneider,* Chief Assistant
Prosecuting Attorney, for the people.

*Lewis & Schuknecht, P.C.* (by *Michael D. Lewis*),
for the defendant.

Before: BANDSTRA, C.J., and MARKMAN and METER, JJ.

METER, J. Defendant Deborah S. Brown appeals as
of right from her conviction by a jury of fraudulent
retention or use of building contract funds, MCL
570.152; MSA 26.332. The trial court sentenced her to
five years' probation, with the first year to be served
in jail. We affirm.

### FACTUAL BACKGROUND

Defendant was a corporate officer for Home Port
Construction Services, Inc. (HPCS), a construction
company that contracted with Joyce Fredrickson in
October 1995 to build a single family dwelling for
$88,380. Defendant, as the qualifying officer[1] for HPCS,

---

[1] MCL 339.2405(1); MSA 18.425(2405)(1) indicates that a corporation
wishing to act as a building contractor must designate one of its officers,
partners, members, or managing agents as a "qualifying officer" who must
meet certain licensing requirements and who "shall be responsible for
exercising the supervision or control of the building or construction oper-

signed the construction contract on the corporation's behalf. From October 1995 through May 1996, Fredrickson made payments to HPCS, eventually transferring the entire contract amount. Despite Fredrickson's timely payments, however, several subcontractors of HPCS who worked on the Fredrickson project were not paid for their work. Furthermore, defendant withdrew funds from the HPCS account for personal use while these subcontractors remained unpaid. As a result, she was charged with and convicted of violating the Michigan builders' trust fund act (MBTFA), MCL 570.151 *et seq.*; MSA 26.331 *et seq.*, which prohibits a building contractor from retaining or using construction payments from a particular project until all laborers, subcontractors, and materialmen who worked on the project have been paid.

### THE BINDOVER

Defendant first argues that she should not have been bound over for trial because she was not a "contractor" within the meaning of the MBTFA, which states, in relevant part:

> Any contractor or subcontractor[2] engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of a felony in appropriating such funds to his own use while any amount for which he

---

ations necessary to secure full compliance with [article 24 of the Occupational Code, MCL 339.2401 *et seq.*; MSA 18.425(2401) *et seq.* ]."

[2] The terms "contractor" and "subcontractor" are not defined in the statute.

may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded[3] . . . . [MCL 570.152; MSA 26.332.]

Defendant contends that because Fredrickson contracted with HPCS for the construction of the dwelling, only HPCS—as the "contractor"—could be held criminally accountable for the misappropriation of Fredrickson's funds under the MBTFA. We disagree. Whether the MBTFA encompasses officers of a corporate contractor who personally misappropriate funds is a question of statutory construction. We review questions of statutory construction de novo, *People v Sheets*, 223 Mich App 651, 655; 567 NW2d 478 (1997), and we review bindover challenges, in general, to determine whether the district court abused its discretion in finding probable cause that the defendant committed the charged offense. *People v Whipple*, 202 Mich App 428, 431; 509 NW2d 837 (1993).

In *Whipple, id.* at 429, n 1, 435-436, this Court held that the principal of a sole proprietorship that acted as a building contractor could be held criminally responsible under the MBTFA. The Court then observed that "[its] analysis *may* not be applicable to officers of a corporate contractor" (emphasis added). *Id.* at 429, n 1. However, "[i]t is beyond question that a corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation." *Attorney Gen-*

---

[3] This language has also been held to create a civil cause of action. See *People v Whipple*, 202 Mich App 428, 432; 509 NW2d 837 (1993), and *James Lumber Co, Inc v J & S Constr, Inc*, 107 Mich App 793, 795; 309 NW2d 925 (1981).

*eral v Ankersen*, 148 Mich App 524, 557; 385 NW2d 658 (1986). This rule of law has been used by this Court to extend criminal liability to corporate employees when they, personally, caused their corporation to act unlawfully.

In *Joy Management Co v Detroit*, 183 Mich App 334, 340; 455 NW2d 55 (1990), two individuals argued that they could not be convicted under a city of Detroit ordinance punishing certain acts by a "purchaser or transferee" of property because their corporation was the actual "purchaser or transferee" of the property in question. This Court stated:

> It is well established that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. . . . Accordingly, since [the individual] plaintiffs . . . allegedly participated in violating the ordinance, they may be prosecuted under it. [*Id.*]

The present case is analogous to *Joy Management*. Defendant contends that because HPCS was the actual "contractor" for the Fredrickson project, she cannot be held criminally responsible under the MBTFA. However, because she was a corporate officer of HPCS and because she "allegedly participated in violating" the MBTFA by allegedly misappropriating Fredrickson's funds, she "may be prosecuted under it."[4] *Id.* This conclusion accords with *People v Miller*, 78 Mich App 336, 343; 259 NW2d 877 (1977), in which this Court held that because the MBTFA "is a remedial statute,

---

[4] We note that although defendant cites two Florida cases for the proposition that an officer of a corporate contractor cannot be held criminally responsible under a statute that expressly punishes the "contractor," these out-of-state cases do not constitute binding authority on this Court.

designed to protect people of the state from fraud in the construction industry," it should be "construe[d] . . . liberally for the advancement of the remedy." It also accords with *Au Bon Pain Corp v Artect, Inc,* 653 F2d 61, 65 (CA 2, 1981), a diversity suit in which the court held that an officer of a corporate contractor could be held civilly liable under the MBTFA.

Defendant challenges the bindover on alternate grounds, arguing that there was no evidence that she misappropriated Fredrickson's funds or that she did so with the intent to defraud. However, as this Court stated in *Whipple, supra* at 431-432:

> At the preliminary examination, the prosecutor is not required to prove each element of the crime beyond a reasonable doubt. Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to support the bindover of the defendant if such evidence establishes probable cause.

Here, the evidence presented at the preliminary examination showed that although Fredrickson made timely payments to HPCS under the contract and although certain subcontractors were owed money, defendant took money from the HPCS account and deposited it in her personal account, after which the subcontractors remained unpaid. This evidence was sufficient to establish probable cause that defendant fraudulently retained or used construction funds under the MBTFA, especially because § 3 of the MBTFA, MCL 570.153; MSA 26.333, indicates that the appropriation of money by a contractor before the payment of subcontractors "shall be evidence of intent to defraud." See generally *Whipple, supra* at 435-436. Accordingly, the district court did not abuse its discretion in binding over defendant for trial. *Id.* at 431.

THE SUFFICIENCY OF THE EVIDENCE AT TRIAL

Next, defendant argues that the prosecution presented insufficient evidence to support her conviction because (1) there was no evidence that defendant withdrew Fredrickson's money, as opposed to money unrelated to the Fredrickson project, from the HPCS account; (2) only the "contractor" could be held responsible for the misappropriation of Fredrickson's funds under the MBTFA, and defendant could not be deemed the "contractor" for the Fredrickson project because she did not actively participate in the day-to-day operations of HPCS, the entity that contracted with Fredrickson; (3) none of Fredrickson's payments were made to defendant as an individual; and (4) there was no evidence that defendant acted with the intent to defraud anyone. In determining whether sufficient evidence existed to support a conviction, this Court views the evidence in the light most favorable to the prosecution and determines whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994).

We disagree that the prosecution presented insufficient evidence to support defendant's conviction. Regarding defendant's first argument (that her conviction was inappropriate because there was no evidence that she withdrew Fredrickson's money, specifically, from the HPCS account), the evidence showed that (1) in October 1995, Fredrickson paid $15,000 to HPCS; (2) in January 1996, the balance in the HPCS account was as low as $98; (3) in December 1995, defendant withdrew at least $2,000 from the HPCS account as "profit;" and (4) at least one subcontractor

for the Fredrickson project was owed over $1,000 beginning in mid-November 1995 and lasting at least until March 1996. In this Court's opinion, this evidence was sufficient to show that defendant misappropriated money that HPCS received from Fredrickson for the construction of her house. See *Whipple, supra* at 433-435. See also *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999) ("Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove the elements of a crime.").

With regard to defendant's second argument (that she should not have been prosecuted under the MBTFA because she was not the "contractor" for the Fredrickson project), she *could*, as indicated earlier, be held responsible under the MBTFA as long as she personally caused the corporation to violate the statute, regardless of whether she actively participated in the day-to-day operations of HPCS. See *Joy Management, supra* at 340. The prosecution presented evidence that defendant withdrew Fredrickson's funds from the HPCS account before subcontractors had been paid. Accordingly, there was sufficient evidence presented that defendant personally caused the misappropriation of construction funds under the MBTFA, and she therefore could be prosecuted under the statute even though she technically was not the "contractor" for the Fredrickson project.

Regarding defendant's third argument (that she could not have violated the MBTFA because she did not personally receive Fredrickson's payments), there is no requirement that contract payments be made directly to the officer of a corporate contractor in order to hold the officer individually responsible under the MBTFA. Indeed, as long as defendant person-

ally misappropriated the funds after they had been received by the corporation, she could be held responsible under the MBTFA. *Id.* Again, there was sufficient evidence that defendant personally misappropriated Fredrickson's funds.

Finally, regarding defendant's fourth argument (that her conviction was inappropriate because there was no evidence that she had the intent to defraud), we point out the following language from § 3 of the MBTFA:

> The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud. [MCL 570.153; MSA 26.333.]

As noted earlier, there was evidence that defendant appropriated money paid to HPCS by Fredrickson before subcontractors on the Fredrickson project had been paid. This appropriation was evidence of an intent to defraud. *Id.* Moreover, the prosecution presented evidence that defendant was aware that HPCS was experiencing financial difficulty at the time she appropriated the money. Accordingly, there was sufficient evidence that defendant acted with the intent to defraud.

### THE WEIGHT OF THE EVIDENCE AT TRIAL

Next, defendant argues that the trial court should have granted her motion for a new trial because the jury verdict was against the great weight of the evidence. We review for an abuse of discretion a trial

court's determination that a verdict was not against the great weight of the evidence. *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993). Defendant contends that the trial court, acting as a "thirteenth juror" under *People v Herbert*, 444 Mich 466, 476-477; 511 NW2d 654 (1993), overruled in *People v Lemmon*, 456 Mich 625; 576 NW2d 129 (1998), should have found incredible Fredrickson's testimony that she dealt mostly with defendant during the construction of her house.[5] Therefore, defendant argues, the court should have found that defendant was not the building contractor for the Fredrickson project and that she could not be held responsible under the MBTFA. However, as stated earlier, defendant could be held responsible under the MBTFA as long as she personally caused the corporation to violate the statute, regardless of whether she actively participated in the day-to-day operations of HPCS as a "contractor." Accordingly, defendant's argument regarding the alleged unbelievability of Fredrickson's testimony is without merit.

Defendant additionally argues that the verdict was against the great weight of the evidence because (1) she was not the "contractor" for the Fredrickson project, (2) there was no evidence that she, personally, received any of Fredrickson's money, (3) there was no evidence that she appropriated Fredrickson's money for her own use, and (4) there was no evidence that she acted with the intent to defraud any-

---

[5] After *Herbert* was decided, the Supreme Court abandoned the principle that a trial court may assess the credibility of witnesses as a "thirteenth juror" in ruling on a motion for a new trial. See *Lemmon, supra* at 646-647. However, because defendant's trial and her motion for a new trial occurred before the *Lemmon* decision, the *Herbert* standard applies to her case. See *id.* at 648.

one. These arguments parallel defendant's arguments regarding the sufficiency of the evidence, and we reject them for the same reasons we rejected defendant's sufficiency arguments.[6] The trial court did not abuse its discretion in denying defendant's motion for a new trial.

THE JURY INSTRUCTIONS

Next, defendant argues that the trial court erred by instructing the jurors that in determining whether defendant acted with the intent to defraud, they could consider whether defendant made someone else suffer a "risk of loss." Defendant contends that the court should have given the standard jury instruction on intent to defraud, which does not include the "risk of loss" language. We review jury instructions in their entirety to determine if error requiring reversal occurred. *People v Caulley*, 197 Mich App 177, 184; 494 NW2d 853 (1992). The instructions must not be "extracted piecemeal to establish error." *Id.* Even if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Id.*

---

[6] We recognize that whether the evidence was sufficient to sustain a conviction and whether the verdict was against the great weight of the evidence are two separate questions. Here, however, defendant's "great weight" argument is premised solely on her allegation that there was *no* evidence presented regarding allegedly essential elements of the crime (i.e., she does not argue that although there was some evidence of her guilt, this evidence was outweighed by evidence of her innocence). As stated earlier in our discussion of defendant's sufficiency arguments, we reject defendant's contention that the prosecution presented no evidence regarding essential elements of the crime.

We disagree that the "risk of loss" language requires reversal. First, the trial court was not required to use the standard jury instruction. *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11 (1985). Second, even though the trial court used the "risk of loss" language, it nevertheless informed the jurors that to convict defendant they must find that she acted to "cheat or deceive." The court stated:

> When I say someone must, quote, act with the intent to injure or defraud, unquote, I mean, act to cheat or deceive usually to get money, property or something else valuable, or to make someone else suffer such a loss or risk such a loss.

These instructions, as a whole, sufficiently protected defendant's rights and fairly presented the issues to the jurors, because the jurors were informed that defendant could not be found guilty unless she acted to "cheat or deceive." Finally, persuasive federal case law indicates that a defendant's imposition of a risk of loss on another is sufficient to show an intent to defraud. See *United States v Moede*, 48 F3d 238, 242 (CA 7, 1995), and *United States v Catalfo*, 64 F3d 1070, 1079 (CA 7, 1995). Accordingly, the trial court did not commit error requiring reversal in giving the challenged jury instructions.

Defendant additionally argues that the trial court committed error requiring reversal by informing the jurors that if they found that defendant appropriated construction funds for her own use while laborers, subcontractors, or material providers remained unpaid, "that *shall* be evidence of an intent to defraud" (emphasis added). Defendant contends that the trial court should have used the term "may"

instead of the term "shall," because using the term "shall" negated the specific intent element of the charged offense. We disagree that the trial court's use of the term "shall" merits reversal. First, defendant did not preserve this argument for appeal because she did not raise it in her statement of the issues presented. See *People v Yarbrough*, 183 Mich App 163, 165; 454 NW2d 419 (1990). Second, the trial court, immediately after giving the challenged instruction, stated that the jurors were "not required to draw this conclusion," thereby informing them that they could acquit defendant on the basis of a lack of intent even if they found that defendant appropriated construction fund money while subcontractors or others remained unpaid. Finally, § 3 of the MBTFA states:

> The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, *shall* be evidence of intent to defraud. [MCL 570.153; MSA 26.333 (emphasis added).]

Clearly, the challenged instruction, which reiterated the language of the statute, merely directed that the jury consider as evidence the "appropriation . . . of any moneys . . . ." As noted, the instruction did not compel or require the conclusion that defendant acted with the intent to defraud. Accordingly, the trial court did not err in giving the challenged instruction.

### THE EVIDENCE OF FINANCIAL DIFFICULTY

Next, defendant argues that the trial court should not have admitted evidence and documents relating to (1) HPCS's bankruptcy proceedings, (2) defendant's

personal bankruptcy proceedings, (3) loans made by certain individuals to HPCS and to defendant and her husband, and (4) a lawsuit initiated against defendant and her husband relating to the nonrepayment of a loan. We review for an abuse of discretion a trial court's decision to admit evidence. *People v Taylor*, 195 Mich App 57, 60; 489 NW2d 99 (1992). An abuse of discretion exists only when an unprejudiced person, considering the facts on which the trial court acted, could find no justification for the ruling. *Id.*

Defendant contends that the challenged evidence should have been excluded under MRE 404(b) because it was relevant only to her propensity or character and because any probative value was substantially outweighed by the prejudicial nature of the evidence. We disagree. The evidence of HPCS's bankruptcy and of loans made to HPCS was relevant to defendant's knowledge that HPCS was experiencing financial difficulty. This knowledge, in turn, was relevant to defendant's intent to defraud, an essential element of the charged crime. Moreover, the evidence of defendant's personal financial difficulty was relevant (1) to the rebuttal of defendant's proposed argument that she lacked the intent to defraud because she intended to pay HPCS debts with her own money and (2) to showing that defendant needed money, and thus had a motive to defraud, despite having a steady job. See *People v Henderson*, 408 Mich 56, 66-68; 289 NW2d 376 (1980).[7]

We conclude that the challenged evidence was relevant to nonpropensity issues and that its probative

---

[7] Although the prosecution evidently did not use the evidence of defendant's personal financial difficulty to show a motive to defraud, the evidence was nonetheless admissible for this purpose under *Henderson*.

value was not substantially outweighed by the danger
of unfair prejudice. See MRE 403. Accordingly, the
trial court did not abuse its discretion in admitting
the evidence. See *Taylor, supra* at 60.

DUE PROCESS CONCERNS

Finally, defendant argues that (1) because the
MBTFA fails to define the terms "contractor" and
"appropriation," and (2) because the MBTFA does not
specifically indicate that an officer of a corporate
contractor may be held accountable under the stat-
ute, it is unconstitutionally vague as applied to her
and does not provide fair notice of the conduct it
proscribes. This Court reviews constitutional issues
de novo. *People v Slocum (On Remand)*, 219 Mich
App 695, 697; 558 NW2d 4 (1996).

The retroactive application of an unforeseeable
interpretation of a criminal statute, if detrimental to a
defendant, may violate the Due Process Clause. See
*People v Doyle*, 451 Mich 93, 100; 545 NW2d 627
(1996). In the instant case, however, we discern no
unforeseeable interpretation of the MBTFA. Indeed, in
*Miller, supra* at 344-345, this Court rejected a vague-
ness challenge to the MBTFA and stated that "the stat-
ute is quite clear" with regard to the conduct it pro-
hibits. Accordingly, defendant's argument regarding
the MBTFA's failure to define "appropriation" is without
merit. Moreover, defendant should have known that
as an officer of HPCS, she could be held criminally
responsible if she personally caused HPCS to violate
the MBTFA. See *Joy Management, supra* at 340.
Accordingly, the failure of the MBTFA to specifically
define "contractor" as including a corporate contrac-
tor's officer who personally misappropriates funds

does not render the statute unconstitutionally vague as applied to defendant.

Affirmed.

MARKMAN, J., did not participate.