# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAVID LAMONT CROSKEY,

      Defendant-Appellant.

UNPUBLISHED
October 18, 2016

No. 327724
Oakland Circuit Court
LC No. 2014-252611-FC

---

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

The jury convicted defendant of three counts of first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b(1)(f), and one count of assault by strangulation, MCL 750.84(1)(b). The court sentenced defendant as a fourth-habitual offender, MCL 769.12, to serve 50 to 75 years' imprisonment for his CSC-I convictions and 25 to 37½ years' imprisonment for his assault by strangulation conviction. We affirm his convictions but remand for further proceedings related to sentencing.

Defendant's convictions arise from a sexual assault of the complainant in the city of Pontiac on the morning of October 7, 2014. At the time of trial, defendant attempted to establish that the sexual contact between him and the complainant was a consensual transaction. In his Standard 4 brief, defendant raises several issues related to his convictions; in his brief on appeal, defendant challenges his sentences. We will initially consider the issues related to defendant's convictions because if any of these challenges prove meritorious and he were entitled to relief, the challenges to his sentences likely become moot.

## I. STANDARD 4 BRIEF

## A. DOUBLE JEOPARDY

Defendant argues that the three CSC-I convictions violate his double jeopardy protections. Defendant never raised this issue at the trial court. Thus, our review of this unpreserved constitutional issue is for plain error affecting substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014).

"The double jeopardy clauses of the United States and Michigan Constitutions protect against governmental abuses for both (1) multiple prosecutions for the same offense after a

-1-

conviction or acquittal and (2) multiple punishments for the same offense." *People v Calloway*, 469 Mich 448, 450; 671 NW2d 733 (2003). It is the latter protection, multiple punishments for the same offense, that defendant asserts was violated. We disagree.

A person is guilty of criminal sexual conduct pursuant MCL 750.520b(1)(f) if he engages in sexual penetration with another person and "the actor causes personal injury to the victim and force or coercion is used to accomplish the sexual penetration." Defendant admitted to three separate penetrations. However, he contends that because complainant's mental anguish was the only personal injury suffered, and there is no evidence that the mental anguish was attributable to any one of the three penetrations, he is being punished multiple times for the same personal injury in violation of his double jeopardy protections. Despite defendant's representation to the contrary, mental anguish was not the only personal injury suffered by complainant. Testimony established that complainant had bruising on her neck and back, and there were small lacerations in the vulva area that were noted during the forensic examination. Also, prior to the penetrations, defendant struck complainant three times in the face, causing pain and a bloody nose. Moreover, assuming there was only one identifiable personal injury, in light of the three separate penetrations, this would still be enough to support the three separate CSC-I convictions. See *People v Martinez*, 190 Mich App 442, 443-445; 476 NW2d 641 (1991) (holding that an initial physical assault before two separate acts of penetration may satisfy the personal injury element of both penetrations). Thus, defendant's double jeopardy challenge must fail as he cannot demonstrate that he was subject to multiple punishments for the same offense.

## B. EVIDENTIARY CHALLENGES

Defendant says that the trial court erred in admitting the testimony of registered nurse Diane Zalecki-Bertalan. We review this unpreserved evidentiary issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Although defendant spends considerable time citing to legal platitudes relating to the admission of expert testimony and scientific evidence, the crux of his argument is that Zalecki-Bertalan was not qualified to testify regarding the mechanics of strangulation. Defendant contends that "[t]o properly assess strangulation an expert should have education in forensic pathology or forensic medicine for the testimony to be based on reliable principles." Defendant further contends that the witness was improperly permitted to give an opinion that the assaults occurred in the manner described by complainant. After reviewing the record, we find that nurse Zalecki-Bertalan was properly qualified to testify regarding the mechanics of strangulation and, contrary to defendant's assertions, the witness never testified that complainant was strangled.

MRE 702, which addresses the admissibility of expert testimony, provides that an expert may be qualified "by knowledge, skill, experience, training, or education." Here, Zalecki-Bertalan testified that she was a registered nurse and the program director of Haven START[1] facilities. In this role, Zalecki-Bertalan functioned as a forensic nurse for domestic violence and sexual assault cases in Oakland County. With respect to specialized training, Zalecki-Bertalan testified that she took courses in forensics that specialized in sexual assault. She was also

---

[1] START is the acronym for Safe Therapeutic Assault Response Team.

certified by the International Forensics Association after passing a certification examination. Regarding strangulation issues in particular, the witness testified that she was certified by the National Strangulation Institute. Zalecki-Bertalan also completed a course in advanced strangulation given by the Family Justice Center in San Diego. Based on the foregoing, the witness was qualified to provide expert testimony related to the mechanics of strangulation in light of her testimony regarding her experience, knowledge, and training in the area of forensic science, and strangulation, in particular.

Further, we find no record support for defendant's assertion that the witness opined that the strangulation occurred in the manner described by complainant. In general, Zalecki-Bertalan testified to the actions she took in collecting evidence for a rape kit and to her physical examination of complainant. In addition, Zalecki-Bertalan testified to the physical elements that are typically present and consistent with the act of strangulation. Zalecki-Bertalan did not give an ultimate opinion on whether complainant was strangled. She simply testified that there appeared to be light bruising around complainant's jawline. She did not opine that the bruising was caused by strangulation. Indeed, Zalecki-Bertalan explained that bruising or redness is seen in fewer than 50% of reported strangulation cases. Moreover, if the witness had testified to this ultimate conclusion, such testimony would not have been objectionable. See MRE 704. Considering the foregoing, we conclude that the admission of Zalecki-Bertalan's testimony did not constitute plain error.

Defendant also contends that the trial court erred when it admitted the testimony of Deputy Michael Richardson because the testimony was not reliable. Again, after citing to various legal platitudes related to the admissibility of tracking dog evidence, defendant essentially argues that the necessary foundation was not laid for the admission of Deputy Richardson's testimony. Defendant contends that the prosecution was required to establish the officer's training and his qualifications as an expert in the use of tracking dogs. Again, defendant has failed to establish that this unpreserved evidentiary issue constituted plain error.

At the time of trial, Deputy Richardson testified that he was employed with the Sheriff's Department as a K-9 deputy. He explained that his K-9 partner, Blitz, had been certified by a national organization for four years. Blitz's specialty was tracking humans. Then, in general, Deputy Richardson testified to the events occurring on October 7, 2014, when he brought Blitz to the scene of the alleged attack and set Blitz to tracking. Sgt. Richardson did not testify to his training or experience in the use of tracking dogs. Nonetheless, the admission of Deputy Richardson's testimony did not constitute plain error. In *People v Hill*, unpublished opinion per curiam of the Court of Appeals, issued May 11, 2011 (Docket No. 290031), this Court held that it was not error to admit the testimony of a K-9 officer under circumstances nearly identical to the present case. Then, in a published order of the Supreme Court, in lieu of granting leave to appeal, the Court affirmed that part of the Court of Appeal's opinion. *People v Hill*, 489 Mich 881 (2011). In doing so, the Supreme Court stated,

> Trooper Escort was not required to be qualified pursuant to MRE 702 because he was not testifying as an expert witness. Rather, he simply testified to the underlying facts and his personal observations concerning his use of a trained dog in the course of a criminal investigation. He did not interpret or extrapolate from those facts or personal observations. [*Id.* at 881-882.]

In this case, Deputy Richardson simply testified to what his trained tracking dog did and the route he pursued. The witness did not extrapolate from these facts or personal observations. Deputy Richardson did not testify as an expert witness; consequently, it was not necessary to qualify him as an expert witness in the use of tracking dogs. Accordingly, permitting Deputy Richardson to testify in the manner described did not constitute plain error.

Moreover, we hold that any error would have been harmless, as Deputy Richardson's testimony related to the tracking of defendant's scent from the scene of the assault. Defendant did not dispute that he was with the complainant and had sexual contact with her. Instead, he argued that any sexual contact was consensual, which Deputy Richardson's testimony did not implicate.

## C. SUFFICIENCY OF THE EVIDENCE

Defendant asserts that there was insufficient evidence to support his conviction for assault by strangulation because there was no testimony that complainant lost consciousness or that her breathing was impeded. Defendant further contends that the jury concluded that strangulation occurred solely based on the improperly admitted testimony of Zalecki-Bertalan. After reviewing the record, we find that, regardless of the testimony of Zalecki-Bertalan, the evidence was sufficient for the jury to find that the essential elements of the crime were proven beyond a reasonable doubt.

We review challenges to the sufficiency of the evidence de novo. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012). In doing so, we view the evidence in the light most favorable to the prosecution to determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

A defendant is guilty of assault by strangulation when he "assaults another by strangulation or suffocation." MCL 750.84(1)(b). An "assault" is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). And a "battery" is defined as "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v Reeves*, 458 Mich 236, 240 n 4; 580 NW2d 433 (1998). "'[S]trangulation or suffocation' means intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." MCL 750.84(2).

The complainant testified that when she struggled to free herself from defendant's hold, defendant "put his hands around [her] neck and started choking [her]." She testified that his hands were so tight around her neck, she could not breathe normally, and that she "lost breath" and "couldn't see." She "thought she was dead" and she "thought [she] was going to die." Viewing complainant's testimony in the light most favorable to the prosecution, there was ample evidence for the jury to find defendant guilty of assault by strangulation as the evidence established that defendant intentionally impeded complainant's normal breathing by applying pressure to her throat or neck. Accordingly, there is no merit to defendant's argument that there was insufficient evidence to support his conviction of assault by strangulation.

-4-

## D.  JURY INSTRUCTIONS

Defendant raises two instructional errors in his Standard 4 Brief.  The first is related to the instructions regarding the use of a tracking dog.  The other is related to the order in which the instructions were given.  After the jury was charged, defense counsel expressed satisfaction with the instructions as read.  Consequently, defendant has waived any claimed instructional error. *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011).  Moreover, assuming that the errors were not waived, defendant has failed to establish that the alleged unpreserved errors constitute plain error that affected his substantial rights.

According to the available transcript, at the time of trial, the jury was instructed as follows on the weight to be given evidence related to the use of a tracking dog:

> You have heard testimony about the use of a tracking dog.  You must consider— excuse me.  You must consider tracking dog evidence with great care and remember that it has little value as proof.  Even if you decide it is reliable, *you must convict* the defendant based only on tracking dog evidence.  There must also be other evidence that the defendant is guilty.  [Emphasis added.]

The foregoing instruction, if it was actually given as the transcript represents, has omitted the word "not" before the word "convict."  See M Crim 4.14.[2]  Defendant argues that the omission of the critical word "not" denied him a fair trial.  We disagree.

This Court reviews jury instructions in their entirety to determine if error requiring reversal occurred.  *People v Brown*, 239 Mich App 735, 746; 610 NW2d 234 (2000).  "The instructions must not be 'extracted piecemeal to establish error.'" *Id.*, quoting *People v Caulley*, 197 Mich App 177, 184; 494 NW2d 853 (1992).  "Even if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Brown*, 239 Mich App at 746.

It is possible that the court reporter erred in transcribing this instruction.  In fact, after reading the jury charge, nobody caught the alleged misreading, and at the conclusion of the instruction, the court asked if the attorneys were satisfied with the instructions.  Neither defense counsel nor the prosecutor objected, and both parties voiced their satisfaction with the instructions as read.  Thus, it is questionable whether the court misread the phrase.  In any event, even if the court misread the sentence as it appears in the trial transcripts, when read in context, any deficiency in meaning was cured.  Indeed, the sentence immediately preceding the omission

---

[2] M Crim JI 4.14 provides:

> You have heard testimony about the use of a tracking-dog.  You must consider tracking-dog evidence with great care and remember that it has little value as proof.  Even if you decide that it is reliable, you must not convict the defendant based solely on tracking-dog evidence.  There must be other evidence that the defendant is guilty.

states that such evidence "has little value." And the sentence following the omission at issue makes it clear that "[t]here must also be other evidence that the defendant is guilty." Thus, when read as a whole, the clear meaning of the instruction to the jury would have been that tracking dog evidence is of questionable value and that any conviction cannot be based solely on such evidence.

Defendant also challenges the sequential order in which certain instructions were given. Specifically, defendant argues that instructing the jury on the definition of "mental anguish," which is part of the definition of "personal injury," following the instruction on the elements of assault by strangulation misled the jury. Defendant contends that the jury was misled because considering the order in which the instructions were given, the jury would conclude that mental anguish was an element of assault by strangulation when, in fact, it is only relevant to the charge of CSC-I. Jury instructions are to be reviewed in their entirety. *Id.* Viewing the instructions as a whole, the jury would not have been misled. The trial court instructed the jury on the elements of each of the four charged offenses. It then naturally transitioned to an instruction related to the finding of mental anguish. At no time did the court indicate that the jury should consider the issue of mental anguish in the context of the assault by strangulation charge. There is nothing to suggest that the jury would have assumed that a finding of "mental anguish" was in any way related to the charge of assault by strangulation. There is no support for defendant's argument that the order in which the instructions were given influenced the jury's verdict.

## II. OFFENSE VARIABLE SCORING

Defendant argues that the evidence was insufficient to support the court's scoring of offense variables (OVs) 3, 7, 10, and 19. With respect to defendant's preserved challenge to the scoring of OV 7, under the sentencing guidelines, a court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The Court reviews de novo the trial court's determination whether the facts as found satisfy the scoring conditions articulated in the statute. *Id.* With respect to the defendant's unpreserved evidentiary challenges to OVs 3, 10, and 19, this Court will review the scoring of these variables for plain error affecting defendant's substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004).

### A. OV 3

Defendant argues that the trial court erred when it assessed 10 points for OV 3. The statute directs a sentencing court to assess 10 points for OV 3 where the victim sustains "bodily injury requiring medical treatment." MCL 777.33(1)(d). The phrase "requiring medical treatment" refers to the necessity for treatment and not the victim's success in obtaining treatment. MCL 777.33(3). Defendant contends that there was no evidence that complainant required or received medical treatment. However, complainant testified that she was punched three times in the face, that she had a nose bleed, and that she was swallowing blood. Complainant reported that her pain was a 7 on a 10-point scale. She further testified that defendant strangled her, she could not breath, she could not see, and she thought she was dying. The testimony further established that complainant was taken to McLaren Hospital prior to being transported to the SMART facility for the processing of a rape kit. Nurse Zalecki-Bertalan testified that during all of her forensic evaluations, a medical history is taken, a physical

examination is performed, and there is medication that is offered to patients. The foregoing evidence provided support for the trial court's finding that complainant sustained bodily injury requiring medical treatment. Thus, with respect to OV 3, defendant has failed to establish plain error.

## B. OV 7

Defendant challenges the trial court's assessment of 50 points for OV 7. MCL 777.37 governs OV 7 and provides a score of 50 points is appropriate when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety suffered during the offense." MCL 777.37(1)(a). It is not argued that any of the first three categories (sadism, torture, or excessive brutality) apply in this case. Instead, the prosecution sought an assessment of 50 points for OV 7 because defendant's conduct was designed to increase the fear and anxiety experienced during the assault.

In *Hardy*, the Supreme Court explained that "it is proper to assess points under OV 7 for conduct that was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 440 Mich at 441. The Court then recognized that all crimes involve the infliction of a certain amount of fear and anxiety; therefore, a "baseline" must be determined in order to assess if the conduct was intended to increase that level of fear and anxiety. *Id*. at 442-443. Ultimately, "all relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount." *Id*. at 443. The evidence established that defendant approached the victim from behind and held her in a "bear hug." Defendant punched the victim in the face three times, held her around the throat, and then threatened, "Do you give up," in an effort to thwart any resistance. Defendant then dragged the victim off the public sidewalk to a secluded garage, where he then sexually assaulted her. Prior to demanding oral sex, defendant cautioned the victim not to do anything crazy or he would "fuck [her] up again." We conclude that the evidence established that defendant engaged in conduct beyond the minimum required to commit the crime. Defendant's conduct was designed to substantially increase the fear and anxiety of the victim to elicit her cooperation and deter resistance. Contrary to defendant's assertion, it was not necessary that defendant's conduct be similarly egregious to that of sadism, torture, or excessive brutality, nor was the court prohibited from considering the circumstances inherently present in the crime. *Id*. at 441-442, 443. Based upon this evidence, the trial court properly assessed 50 points for OV 7.

## C. OV 10

Defendant claims that the trial court erred when it assessed five points for OV 10. We disagree. Offense variable 10 considers the exploitation of a vulnerable victim and the assessment of five points is appropriate when "[t]he offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious." MCL 777.40(1)(c).

Here, the prosecution represented in its sentencing memorandum that the victim was skinny and petite and defendant was much larger. Indeed, the victim testified at trial that she

was wearing her backpack strapped over both shoulders and defendant was still able, from behind, to completely encircle her and hold her in a "bear hug." At this point, complainant was completely vulnerable, not being able to see or escape her assailant. Based on this evidence, there was factual support for the trial court's assessment of five points; defendant used the size differential to exploit his victim. With respect to OV 10, defendant has failed to establish plain error.

## D. OV 19

Defendant also argues that the trial court erred when it assessed 10 points for OV 19. We disagree. When considering OV 19, it is appropriate to assess 10 points when "the offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). Fleeing from the police contrary to an order to stop can constitute interference with the administration of justice and is sufficient to support a 10-point assessment for OV 19. *People v Hershey*, 303 Mich App 330, 344; 844 NW2d 127 (2013). At the time of trial, law enforcement officers testified that when defendant was approached, he jumped on his bicycle and attempted to flee in the opposite direction of the officers. Defendant further destroyed evidence when he ripped off the distinctive/identifying sleeves of his shirt and attempted to flush them down the toilet. Based upon this evidence, defendant has failed to establish plain error in the scoring of OV 19.

## E. OV SUMMARY

Therefore, defendant has failed to establish that he is entitled to resentencing based on evidentiary challenges to the scoring of his offense variables.

## III. JUDICIAL FACT-FINDING CHALLENGE

Defendant argues that the trial court engaged in impermissible judicial fact-finding in regard to the scoring of the OVs. Unpreserved claims of error involving judicial fact-finding are subject to the plain error analysis, and plain error cannot be established when "(1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *People v Lockridge*, 498 Mich 358, 394-395; 870 NW2d 502 (2015).

Defendant claims, and the prosecution agrees (in part), that the scoring of OVs 4 (psychological injury), 7 (aggravated physical abuse), 10 (exploitation of vulnerable victim), and 19 (interference with administration of justice) was based on judicial fact-finding.[3] Defendant thus contends that he is entitled to the remand procedures as set forth in *Lockridge*. Again, the prosecution agrees.

---

[3] The prosecution asserts that the scoring of OV 19 was not based on judicial fact-finding, but rather defendant's own admission that when he was approached by the police, he mounted his bicycle and rode in the opposite direction.

In *Lockridge*, the Michigan Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S CT 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient." *Lockridge*, 498 Mich at 364. Specifically, "to the extent that the OVs scored on the basis of facts not admitted by the defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e., the defendant's 'mandatory minimum' sentence, that procedure violates the Sixth Amendment." *Id*. at 373-374. In fashioning a remedy for the constitutional infirmity, the Court severed MCL 769.34(2) to the extent it made the sentencing guidelines mandatory, and it held that the recommended minimum guidelines range would be merely advisory. *Id*. at 364-365.

Defendant argues and the prosecutor agrees that OVs 4, 7, 10, were based on judicially found facts, and, more importantly, defendant's minimum sentence range under the sentencing guidelines would have changed without that scoring. Indeed, the facts supporting the scoring of these OVs were not necessarily encompassed in the jury's verdict nor were they admitted to by defendant. Consequently, judicial fact-finding mandatorily increased defendant's guidelines minimum sentence range, and defendant has thereby established "a threshold showing of the potential for plain error." *Id*. at 395.

Therefore, we remand to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. *Id.* at 397. On remand, as explained in *Lockridge*, the trial court must adhere to the *Crosby*[4] remand procedure. Specifically, the trial court must first allow defendant the opportunity to inform the court that he will not seek resentencing. If defendant does not advise the court in a timely manner, then "the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant." *Id*. at 398. Further, "in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence." *Id*. at 398.

## IV. ASSAULT SENTENCE

Defendant also claims that the trial court erred when it failed to score the sentencing guidelines for his assault by strangulation conviction separately, and therefore, his sentence for that conviction constitutes an unlawful departure. We disagree. Pursuant to *People v Lopez*, 305 Mich App 686, 690; 854 NW2d 205 (2014), a trial court is "not required to independently score the guidelines for and sentence defendant on each of his concurrent convictions if the court properly scored and sentenced the defendant on the conviction with the highest crime classifications." This Court reasoned that because the sentences were to be served concurrently, the guidelines range for the highest-crime class offense would subsume the guidelines range for

---

[4] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

the lower-crime-class offense. *Id.* at 691-692. Consequently, there would be no reason or benefit for establishing guidelines ranges for the lower-crime class offense. *Id.* at 692.

Here, the trial court was not required to score the sentencing guidelines for any offenses other than CSC-I because it was the highest crime classification and was to be served concurrently with the assault sentence. *Id.* Moreover, because defendant was sentenced as a fourth-habitual offender, the trial court was required, pursuant to MCL 769.12, to sentence defendant to a minimum of 25 years' imprisonment.

## V. PSIR

Defendant avers that he is entitled to a remand to the trial court to have inaccuracies in his PSIR corrected. Defendant acknowledges that the inaccuracy has no bearing on his current length of sentence but nonetheless contends that he is entitled to an accurate sentencing report. Specifically, defendant asserts that the PSIR currently indicates that he was previously convicted of "delivery of marijuana" when it should read "delivery of a controlled substance less than 50 grams." Although the corrected PSIR indicates that defendant was charged at the time of his arrest with "delivery of marijuana less than 50 grams," it further indicates that his "final charge" was "delivery of controlled substances less [sic] 50 grams" and that he pleaded to "controlled substance." Because the record does not demonstrate any inaccuracy in the PSIR that requires correction, defendant is not entitled to a remand.

We affirm defendant's convictions but remand for further proceedings as described in Part III of our opinion related to the *Lockridge* issue. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly

-10-