*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DENNIS ALLEN DAVIS,

        Defendant-Appellant.

UNPUBLISHED
February 18, 2021

No. 350271
Muskegon Circuit Court
LC No. 18-004208-FH

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and REDFORD, JJ.

PER CURIAM.

Defendant, Dennis Davis, appeals by right his jury trial convictions of third-degree fleeing and eluding, MCL 257.602a(3), and resisting and obstructing a police office, MCL 750.81d(1). Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

In the summer of 2018, Davis was driving a red minivan in and around Fruitport, Michigan. The back of the van was covered with stickers and other writings related to his belief that he is not legally required to have a driver's license, license plate, or insurance. In accordance with that belief, Davis placed a placard that said "PRIVATE" in the space where a license plate would typically be attached. Multiple people notified law enforcement of the vehicle. On one occasion, a police sergeant observed the vehicle in a parking lot. By running the VIN, he learned that the vehicle had a valid license plate, but there was no insurance on it. The sergeant wrote a note on the back of his business card, stating that the license plate had to be attached and directing that insurance be obtained for the vehicle. He warned that if it was not done, the vehicle would be impounded if it was on the road.

Subsequently, Davis approached the sergeant while he was eating and attempted to give him paperwork purportedly showing that he was not required to have a driver's license, license plate, or insurance. The sergeant, however, declined the paperwork and repeated his warning that the vehicle would be impounded if it continued to operate without insurance and a visible license plate. Davis responded by saying "something to the effect of bring your checkbook."

-1-

On July 7, 2018, the police sergeant observed Davis get in his vehicle and drive out of a parking lot. The sergeant pulled behind him at a red light on Dangl Road and observed that the vehicle still did not have a license plate displayed. He activated his lights after following Davis through the intersection. Davis did not stop, so the sergeant activated the siren on his vehicle. Davis still did not pull to the side and stop his vehicle. Instead, he proceeded down Dangl; he estimated that he did not exceed 33 miles per hour.

When Davis reached Katy Drive, he braked and used his indicator light to show that he was turning. He proceeded to drive down Katy Drive, going slower than 33 miles per hour, until he reached his mother's residence. He then stopped in the driveway and exited his vehicle. The sergeant directed him to stay still and attempted to restrain him. Davis, however, turned his body from the officer and tried to keep his hands apart. He made comments about wanting to keep his wrist watch from being damaged; at trial he explained that his watch was valuable and he did not want it to become damaged. Eventually another officer arrived and, with that officer's assistance, the police sergeant was able to successfully handcuff Davis and put him in the backseat of his patrol vehicle.

Initially Davis was only charged with fleeing and eluding; however, the prosecutor moved to amend the information to include a charge of resisting and obstructing a police officer. The trial court granted the motion, but remanded to the district court for a preliminary examination on the new offense. Davis was bound over on the second charge. The jury convicted him of both charges.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Davis argues that there is insufficient evidence to support his fleeing and eluding conviction. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). It is the trier of fact's role to judge credibility and weigh the evidence. *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011). Thus, "[i]n reviewing a challenge to the sufficiency of the evidence, this Court analyzes the evidence presented in the light most favorable to the prosecution to determine whether any rational trier of fact could have found that the essential elements of the crime charged were proven beyond a reasonable doubt." *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Jackson*, 292 Mich App at 587.

### B. ANALYSIS

Davis was convicted under MCL 257.602a(3), which provides:

(1) A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the

officer's vehicle is identified as an official police or department of natural resources vehicle.

\* \* \*

(3) Except as provided in subsection (4) or (5), an individual who violates subsection (1) is guilty of third-degree fleeing and eluding, a felony punishable by imprisonment for not more than 5 years or a fine of not more than $1,000.00, or both, if 1 or more of the following circumstances apply:

\* \* \*

(b) A portion of the violation occurred in an area where the speed limit is 35 miles an hour or less, whether that speed limit is posted or imposed as a matter of law.

Davis only argues that there was insufficient evidence that he attempted to flee, elude, or otherwise avoid being caught by a police officer. As explained in *People v Grayer*, 235 Mich App 737, 741, 599 NW2d 527 (1999), the common meaning of the terms "flee" and "elude" both "connate an intent to take affirmative action, not simply fail to submit."[1] In this regard, although the statute does not require the defendant to exceed a specific speed or to speed over a long distance, the prosecution is required "to demonstrate that the defendant refused to obey by trying to flee or avoid capture, which element necessitates a finding of some intent on the part of the defendant to flee or avoid capture." *Id*. at 741-742.[2]

On appeal, Davis stresses that he was driving in a cautious manner, noting that he did not run any lights or stop signs, exceed the speed limit, or make any sharp turns. Approximately 48 seconds elapsed between when the officer activated his lights and when Davis brought his vehicle

---

[1] The *Grayer* Court was interpreting MCL 750.479a(3), whereas Davis was charged with a violation of MCL 257.602a(3). However, both statutes employ substantially identical language when describing the prohibited conduct. Compare MCL 750.479a(3) and MCL 257.602a(3). Indeed, the only differences between MCL 750.479a(3) and MCL 257.602a(3) are as follows:

1. MCL 750.479a applies the operator of a motor vehicle or a vessel, whereas MCL 257.602a(3) only applies to a driver of a motor vehicle, and

2. the punishment under MCL 750.479a(3) can include up to a $5,000 fine, but the maximum fine under MCL 257.602a(3) is only $1,000.

Because the language used is otherwise identical, we adopt the *Grayer* Court's analysis of the elements required to convict a defendant of third-degree fleeing and eluding conviction under MCL 750.749a(3) as the same elements for a third-degree fleeing and eluding conviction under MCL 257.602a(3).

[2] But see *People v Abramski*, 257 Mich App 71, 73; 665 NW2d 501 (2003) (stating that fleeing an eluding is a general intent crime and only requires the intent to do the physical act of fleeing and eluding an officer).

to a stop at his mother's residence. Davis points out that he used his turn signal. His testimony at trial was that he decided to stop at his mother's residence for both his safety and the safety of the police officer attempting to pull him over. Yet, the plain language of the statute does require that a defendant flee the police for a long distance or a long time. See *Grayer*, 235 Mich App at 743 (there is no "length of chase" requirement in MCL 750.479(a)(3)). Thus, the fact that the distance travelled was travelled in approximately 48 seconds is not dispositive. Next, the statute does not require the defendant to exceed the speed limit; instead, it states that a driver given a lawful command by a police officer to stop his or her motor vehicle "shall not willfully fail to obey that direction by *increasing the speed* of the motor vehicle." MCL 257.602(a)(1) (emphasis added). Accordingly, the fact that Davis did not exceed the speed limit is also not dispositive. Rather, the fact that the length of the chase was short and the speed of the chase was within the speed limit are facts supporting an inference that the defendant was not attempting to flee or elude. The jury, however, was not obligated to make that inference. Moreover, although the jury was free to credit Davis's testimony that his intent was merely to stop in a safer location, the jury was not required to do so.

Viewing the evidence in the light most favorable to the jury's verdict, there is sufficient evidence to support Davis's conviction of third-degree fleeing and eluding. Based on the dash cam video, the officers' testimony, and Davis's testimony, the jury could reasonably infer that Davis either fled or attempted to evade capture when he continued down Dangl Road, turned onto Katy Road, and only stopped on private property. In addition to the direct evidence showing Davis's refusal to stop, there was also additional circumstantial evidence indicating his intent to elude the officer. For instance, the jury could infer that he intended to flee based upon his actions after stopping the vehicle, which included him immediately exiting his vehicle and physically refusing police commands to place his hands behind his back. Further, Davis had been previously informed that if his vehicle was found "on the road" without a proper license plate and proof of insurance, it would be impounded. Thus, he had a motive for getting his vehicle off the road and onto private property before stopping. In sum, when viewed in the light most favorable to the jury's verdict, a rational trier of fact could determine that Davis intended to and did, in fact, take affirmative actions to flee the police or evade capture.

III. JURY INSTRUCTIONS

Davis next argues that the trial court erred by failing to instruct the jury that the legal definition of "fleeing" requires affirmative acts or conduct, not simply a failure to submit. This issue arose when the jury sent a note asking for the legal definition of fleeing. Before providing a supplemental instruction, the court indicated its proposed response to the question (and two other questions). In response, Davis engaged in a colloquy with the court regarding the proposed response to the third question, but did not say anything about the response to the planned response to the question regarding the definition of fleeing. Thereafter, the court instructed the jury:

> There is no legal definition of fleeing. There's no technical legal definition of feeling. It's the ordinary, common, everyday use of that word that you apply in this case. There's no technical legal definition for that.

After the jury returned to deliberate, the court asked the prosecutor and Davis if there were "any exceptions to the answers that were provided to the jurors." Davis stated, "No." By expressly approving the jury instructions on the record, Davis waived any objection to the jury instructions, so there is no error to review. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) ("[B]y expressly and repeatedly approving the jury instructions on the record, defendant waived any objection to the erroneous instructions, and there is no error to review.").

## IV. PROSECUTORIAL VINDICTIVENESS

### A. STANDARD OF REVIEW

Davis next argues that his right to due process was violated when the prosecutor brought a resisting and obstructing charge as punishment for his decision to file a motion to dismiss the fleeing and eluding charge. Allegations of prosecutorial vindictiveness involve an issue of due process. *People v Laws*, 218 Mich App 447, 452; 554 NW2d 586 (1996). This Court reviews constitutional issues de novo. *People v Brown*, 239 Mich App 735, 750; 610 NW2d 234 (2000). However, because the issue was not raised in the trial court, our review is for plain error affecting Davis's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

### B. ANALYSIS

Vindictive prosecution occurs when a defendant is prosecuted for asserting a constitutional right. *People v Ryan*, 451 Mich 30, 35-36; 545 NW2d 612 (1996). In *People v Jones*, 252 Mich App 1, 7; 650 NW2d 717 (2002), this Court explained that "[t]here are two types of prosecutorial vindictiveness, presumed vindictiveness and actual vindictiveness." Here, Davis argues that is a presumption of prosecutorial vindictiveness due to the timing of the additional felony charge. Specifically, the preliminary examination on the fleeing and eluding charge was held on August 13, 2018. At that examination, the police sergeant testified that when he asked Davis to place his hands behind his back, Davis did not comply. Instead, he kept his arms in front of him and turned his body away so that the officer could not handcuff him. The trial on the fleeing and eluding charge was set for October 30, 2018. Two weeks before the trial, Davis filed a motion to dismiss. The hearing was held 8 days before the trial was scheduled to begin. During that hearing, the prosecutor orally moved to amend the information to add a resisting or obstructing charge. Davis argues that after the preliminary examination, the prosecution could have added the resisting or obstructing charge at any time during the next two months, but instead waited until after Davis filed a pretrial motion to have the original charge dismissed. However, "the imposition of additional charges that are within the prosecution's charging discretion does not constitute sufficient evidence from which to presume vindictiveness." *People v Perry*, 317 Mich App 589, 595; 895 NW2d 216 (2016). We are unconvinced that the timing of the charging decision renders the decision vindictive, especially in light of the rebuttal testimony that the timing of charging decisions varies and that the later-availability of video evidence can make a difference in the timing.

Next, Davis contends that the prosecutor's allegedly vindictive charging decision was motivated by frustration with the way Davis—who was representing himself—was litigating the case. This appears to be an allegation of actual vindictiveness. In support of this argument, Davis notes that the prosecutor complained that the motion to dismiss did not comply with the notice

requirements. He also references the various unconventional arguments he raised throughout the case, suggesting that because of his aggressive self-representation the prosecutor was compelled to vindictively add an additional felony charge. We are not persuaded that the prosecutor's assertion that notice of the motion is evidence of frustration, especially in light of the prosecutor's immediate statement that, despite the technical deficiency, the prosecution was ready to proceed. Furthermore, notwithstanding that Davis did, in fact, raise a number of unconventional challenges to the case, Davis has not directed us to any part of the record supporting an inference that the prosecutor was so incensed by Davis's arguments that it vindictively added an additional felony charge. Indeed, the record reflects the prosecutor never expressed hostility in response to Davis's arguments and did not make any threats suggesting that Davis would be deliberately penalized if he persisted in vigorously litigating his case. It is the defendant's burden to "affirmatively prove actual vindictiveness in order to establish that there was a denial of due process." *Jones*, 252 Mich App at 8. Davis has failed to meet that burden here, so relief is not warranted.

Affirmed.

/s/ Michael J. Kelly
/s/ Amy Ronayne Krause
/s/ James Robert Redford