*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
April 21, 2022

No. 354619
Macomb Circuit Court
LC No. 2019-001680-FC

VAUGHN LEONARD DORTCH,

        Defendant-Appellant.

Before: BORRELLO, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), assault with intent to murder, MCL 750.83, and assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to life without the possibility of parole for the first-degree murder conviction, 450 to 675 months' imprisonment for the assault with intent to murder conviction, and 450 to 675 months' imprisonment for the AWIGBH conviction. On appeal, defendant challenges only his first-degree murder conviction. We affirm.

On January 5, 2019, defendant appeared at his ex-girlfriend, Destiny Shirley-Brown's, house. Destiny lived at the house with several relatives, including her sister, a cousin, and an aunt. According to Destiny, she had recently gotten back together with a previous boyfriend, Devonte Johnson, and the two were sitting in Destiny's car in front of her house, when she heard her front driver's side tire pop. Johnson then got out of the passenger seat of the car, and, as Destiny looked up, she saw defendant run around the front of her car and begin stabbing the unarmed Johnson. Destiny testified at trial that Johnson fell to the ground and she ran over to defendant and began hitting him. Destiny testified that defendant turned to her, stabbed her twice in the neck, dragged her by her hair to the ground, then continued to stab her multiple times while telling her he was going to kill her. Destiny testified that, while she and defendant were dating, defendant had told her that if she were to ever leave him for Johnson, that defendant would kill them.

Dyemond Brown, Destiny's cousin, and Charelle Brown, Destiny's sister, rushed outside to see what was causing the commotion. Charelle testified that, seeing Destiny on the ground and

defendant on top of her stabbing her, she (Charelle) ran over and started punching defendant. She believed that this caused defendant to drop his knife. According to Charelle and Destiny, after dropping his knife, defendant started running away. Charelle and Dyemond were assisting Johnson and Destiny into the house when defendant turned around and ran back toward them. Before defendant could get into the house, Destiny's aunt, Latarra Brown, grabbed defendant's clothing and pulled him back from the door. Defendant turned around and "slashed" Latarra's hand, breaking her grip. Defendant then ran into the house.

Dyemond testified that once defendant was in the house, he confronted Johnson again and stabbed him several times. According to Dyemond, Johnson "was just standing there, taking the stabs," and did not fight back. Eventually Johnson ended up on the ground and, according to Destiny, defendant stabbed Johnson in the back more than 10 times. Similarly, Latarra testified that after Johnson had passed out, defendant continued to stab him. Destiny and Charelle tried to stop defendant, with Charelle stabbing defendant with a knife from her purse, and Destiny stabbing defendant in the arms and stomach with a pair of cooking scissors. Latarra tried to attack defendant with a taser, but she could not operate it.

At that point, defendant stabbed an unconscious Johnson either one or two more times, smirked or laughed, and then fled out of the front door. Police were arriving at the house just as defendant was fleeing. Officer Daniel Deckert testified that, as he was pulling up to the scene, he observed someone running to a house across the street from Destiny's house. Upon investigation, Officer Deckert found defendant lying on the front porch of that house.

Defendant, Destiny, and Johnson were rushed to the hospital. Destiny ultimately underwent several surgeries to help repair the damage from the stab wounds defendant had inflicted upon her. Johnson's injuries proved fatal; he died within hours of being admitted to the hospital. Defendant was thereafter charged and convicted as indicated above. On appeal, defendant argues that there was insufficient evidence to support his premeditated murder conviction or, alternatively, that the jury's verdict was against the great weight of the evidence.[1]

In a criminal case, due process requires that the prosecution introduce evidence sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. See *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (internal quotation marks and citation omitted). When considering the sufficiency of the evidence, we consider all inferences that can be fairly drawn from the evidence. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). It is for the jury to "determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*.

We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011) (citation omitted). When reviewing the

---

[1] While this case was pending on appeal, defendant moved for a new trial, arguing that the jury's verdict as to his first-degree murder conviction was against the great weight of the evidence. The trial court denied that motion.

sufficiency of the evidence, we view "the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id.* (citation omitted). "[A] a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (internal quotation marks omitted).

MCL 750.316(a) defines first-degree murder as, in part, "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "[T]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Oros*, 502 Mich at 240 (internal quotation marks and citation omitted). "Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a second look." *Id.* at 242 (internal quotation marks omitted). "That is, some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Id.* (internal quotation marks and citation omitted). This Court has also held that premeditation may "be established through evidence of (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *People v Walker*, 330 Mich App 378, 384; 948 NW2d 122 (2019) (internal quotation marks and citation omitted). Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the prosecution proved beyond a reasonable doubt that defendant perpetrated Johnson's murder by means of lying in wait.

Detective Andrew Wood and Officer Alec Mikulec testified that defendant told each of them that just before the murder, he (defendant) bought a knife from a nearby gas station. Surveillance footage confirmed that defendant went to this gas station. Officer Mikulec testified that defendant:

> *A.* . . . went on to say that he waited in the backyard of the home on Rein, 22004 Rein. That he hopped the back fence to get into the backyard and then he waited until [Destiny] arrived home. Said that—.
>
> *Q.* Did, did he indicate to you that he was hiding in the backyard?
>
> *A.* Yes.
>
> *Q.* Did he indicate to you, like, what part of the backyard fence he had jumped?
>
> *A.* No, he did not.
>
> *Q.* What happened next?

*A*. He said he waited for [Destiny] to arrive home. Said he knew when she was gonna arrive home because she would always listen to her music very loudly, so he'd hear her coming down the street. He said he waited for her to park her car, that he came out of the backyard, he had a, he had a knife and that he immediately went and stabbed the, one of the tires out of the car. Then he, then he said that [Johnson] came out of the car and struck him.

Destiny testified that defendant popped the tire on her vehicle, then went over and stabbed Johnson Although defendant told Officer Mikulec that Johnson had struck him first, the jury was not required to credit this testimony over Destiny's testimony. "On appellate review, [this Court must] accept as true the evidence contradicting defendant's version of the crime, as we must consider the evidence in a light most favorable to the prosecution." *Oros*, 502 Mich at 246. On the basis of the foregoing testimony, a rational finder of fact could have concluded that defendant perpetrated Johnson's murder by means of lying in wait.

Even in the absence of evidence that defendant had perpetrated Johnson's murder by lying in wait, there was other evidence that defendant premeditated and deliberated Johnson's murder. Detective Wood testified that defendant told him that:

[h]e had received a telephone call . . . from his mother . . . that . . . she was gonna be locking the door and that he needed to come home. After he had got that telephone call, he decided to go back by the, where this incident occurred on Rein, one last time.

From this statement, one could reasonably infer that defendant gave forethought to the idea of murdering Johnson and that he considered the pros and cons of doing so.

More importantly, several witnesses consistently testified that after defendant stabbed Johnson several times and when household members came outside and began punching defendant, defendant started running away from the house. While running away defendant had the opportunity to take a second look at his actions and simply continue on his way. Yet defendant decided to turn back and make his way into Destiny's house, where he continued to stab Johnson. Defendant stabbed or cut Johnson 34 times, and continued to attack Johnson even after Johnson was unconscious on the ground.

Over the course of the entire episode, Johnson had multiple opportunities to take a second look at his actions. Indeed, in a phone call to Destiny from jail, defendant admitted that he turned back around to complete the murder after consciously weighing the options before him:

*Q*. Now, what was his answer to you when you told him why didn't you just stop?

*A*. Because [it] was already an attempt.

\*\*\*

*Q*. When he says that it was already and attempt in that call, what did that mean to you?

-4-

*A*. That he had already attempt to kill us, so he was going to finish the job off.

Defendant does not contest that the above was sufficient to establish that he premeditated and deliberated murdering *Destiny*. Defendant instead argues that it was insufficient to establish that he premeditated and deliberated murdering *Johnson*. We are satisfied that the prosecution produced sufficient evidence that Johnson was one of defendant's intended targets.

First, surveillance footage from defendant's visit to the liquor store on January 4, 2019 showed him "asking the clerk if he's seen his old girl lately," and asking "who she was with." Second, despite defendant's intimation to the contrary, there is evidence showing that defendant knew of Johnson's existence well before the night of the murder and that he was jealous of Johnson. Destiny testified that when she and defendant started dating, defendant saw "Tay" (Johnson's nickname) tattooed on her, and that she explained to defendant who Johnson was. In addition, at some point in 2017, Destiny testified, defendant told her "that if [she] was to ever leave him for [Johnson], that he would kill us." Destiny also testified that after she and defendant had officially broken up in November of 2018, defendant made threats to Destiny about her relationship with Johnson: "He just would constantly just say like, he didn't want me to be with [Johnson]. That I was supposed to be with him."

Destiny further testified that earlier in the night, she and Johnson were at a party when defendant called her. Destiny testified that defendant asked her where she was at and who she was with. During this phone call, defendant heard Johnson's voice in the background and, according to Destiny, defendant "kind of snapped." Destiny also indicated that when defendant first emerged from hiding in the backyard, he attacked Johnson before he attacked her. Both Charelle and Destiny testified that after defendant entered Destiny's house, he again attacked Johnson before seeking out Destiny.

Finally, according to Dyemond, when defendant entered the house he "kept screaming, where is he at." There was thus ample evidence from which a rational finder of fact could have inferred that, on the night of the murder, defendant knew Destiny was with Johnson and was upset about this. A rational finder of fact could also infer that Johnson was at least one of defendant's intended targets. In sum, viewing the evidence in total and in a light most favorable to the prosecution, we conclude that a rational finder of fact could have concluded that defendant premeditated and deliberated the murder of Johnson and not just Destiny. Defendant's assertion that there was insufficient evidence to convict him of the first-degree murder of Johnson thus fails.

Defendant's alternate argument that the verdict was against the great weight of the evidence and that the trial court should have granted his motion for a new trial on that ground also fails. "We review for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

Although "whether the evidence was sufficient to sustain a conviction and whether the verdict was against the great weight of the evidence are two separate questions," *People v Brown*, 239 Mich App 735, 746 n 6; 610 NW2d 234 (2000), involving different standards of review, defendant essentially argues that the verdict was against the great weight of the evidence because

there was insufficient evidence showing that defendant premeditated and deliberated killing Johnson.

For the reasons already discussed, there was sufficient evidence that defendant premeditated and deliberated the murder of Johnson. Defendant fails to explain why the evidence we have discussed does not reasonably support the jury's verdict or how it preponderates so heavily against the verdict that a serious miscarriage of justice resulted. See *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). Defendant also fails to identify anything that would suggest the jury's verdict was more likely the result of causes outside the record, such as passion or prejudice. See *Lacalamita*, 286 Mich App at 469.

Instead, defendant cites evidence contradictory to Destiny's testimony and the prosecution's version of events. For instance, defendant notes that he told Officer Mikulec that Johnson had struck him first. He also points out that he told Officer Deckert that Johnson and Destiny had attacked him first. The fact that there was evidence contradictory to Destiny's testimony and the prosecution's version of events does not mean that the jury's verdict was against the great weight of the evidence. As this Court has held, "[c]onflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (internal quotation marks and citation omitted). Accordingly, we conclude that the trial court did not abuse its discretion by denying defendant's motion for new trial after finding that the verdict was not against the great weight of the evidence.

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Deborah A. Servitto