*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 18, 2023

Plaintiff-Appellee,

v

No. 359556
Ottawa Circuit Court
LC No. 20-043978-FH

KURTIS DAVID ERDMAN,

Defendant-Appellant.

Before: MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

Defendant, Kurtis David Erdman, appeals by right his jury-trial conviction of one count of resisting and obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant to two days in jail. Subsequently, defendant moved for a new trial, and the trial court denied the motion. On appeal, defendant argues that there was insufficient evidence to support the conviction, that the verdict was against the great weight of the evidence, that the jury instructions were deficient, and that defense counsel was ineffective for failing to object to the jury instructions. For the reasons stated herein, we affirm defendant's conviction.

## I. INTRODUCTION

At the heart of this case is a personal protection order (PPO) that was, according to the prosecution, "verbally" served on defendant by the police shortly before the police arrested him for violating the PPO. MCL 600.2950 concerns PPOs involving housemates or individuals in dating relationships. And MCL 600.2950(22) provides, in relevant part:

> If the individual restrained or enjoined has not been served, a law enforcement agency or officer responding to a call alleging a violation of a personal protection order shall serve the individual restrained or enjoined with a true copy of the order *or* advise the individual restrained or enjoined of the existence of the personal protection order, the specific conduct enjoined, the penalties for violating the order, and where the individual restrained or enjoined may obtain a copy of the order. [Emphasis added.]

-1-

## II. BACKGROUND

This case arises from a domestic dispute on August 8, 2020, between defendant and his girlfriend, Kadi Brown, resulting in 911 calls and a police response to their shared home. Defendant and Brown had a history of domestic disputes, and Brown had obtained a PPO against defendant about three months earlier that had never been served on him because Brown had second thoughts. The unserved PPO prohibited defendant from "entering onto property where [Brown] lives." When the police responded to the residence on August 8, 2020, Brown informed the police that she now wanted the PPO to be served on defendant, and the police determined that they could verbally serve defendant with the PPO.

Ottawa County Sheriff's Deputies Forrest Sabo and Jacob Mackeller observed defendant outside of the residence in the driveway. Defendant saw the deputies, yelled profanities at them, accused them of trespassing, and threatened to spray them with a garden hose. As the deputies attempted to talk to him about the domestic dispute involving Brown, defendant retreated into the home. Deputy Mark Busse then arrived at the house, knocked on the door, and asked defendant to come out of the home. But defendant did not exit the house and instead demanded that the deputies remove themselves from the premises. Through an open window next to the front door, Deputy Busse, standing directly outside the window, discussed with defendant the circumstances surrounding the domestic dispute between defendant and Brown. Deputy Busse then changed the subject to the PPO that had been issued. He informed defendant that Brown had obtained the PPO and that its "conditions prevented [defendant] from being at the house that she lived at" with defendant. Deputy Busse testified that in speaking to defendant through the window, the deputy identified the behavior that was prohibited under the PPO and its conditions. Deputy Busse also testified, "I told him that he could be subject to arrest if he violated [the PPO]." According to Deputy Busse, defendant then closed the window in a forceful manner.

Deputy Mackeller witnessed the conversation between Deputy Busse and defendant at the window. Deputy Mackeller testified that Deputy Busse "verbally" served defendant with the PPO. Deputy Mackeller further testified that Deputy Busse advised defendant that "he was no longer able to be at the residence where . . . Brown resided." Deputy Mackeller indicated that Deputy Busse additionally told defendant that there was a PPO that prohibited defendant from "being in the residence." Deputy Mackeller also claimed that defendant became angry at Deputy Busse, told "Deputy Busse to f**k off," slammed the window shut, and closed the blinds. According to Deputy Mackeller, Deputy Busse knocked on the window to try to continue speaking with defendant, but defendant ignored him. Deputy Mackeller testified that he also spoke with defendant at the window, telling him that the PPO constituted a court order, that the police had no option but to enforce it, and that it would be in defendant's best interests to comply with the PPO.[1]

---

[1] Although it is not clear from the record, it appears from his testimony that Deputy Mackeller spoke to defendant after Deputy Busse was done talking to defendant at the window, meaning that Deputy Mackeller would have spoken to defendant through a closed window. But there was also

Deputy Mackeller testified that his comments to defendant about the PPO motivated defendant to open the front door of the home shortly after defendant's conversations at the window. The deputy asserted that defendant did not fully exit the house; rather, he stood in the doorway, raised his hands, and told the officers not to touch him.[2] Deputy Mackeller testified that the officers tried to calm defendant down, explaining to him that he was not yet in any trouble but that he did have to get out of the house or else he would be arrested. Deputy Mackeller described defendant as being in "an almost manic state." Deputy Mackeller testified that defendant screamed that he would fight the officers if they touched him or tried to enter the house. The deputy indicated that defendant focused his fury on Deputy Busse. Deputy Mackeller further testified that defendant was again told that there was a PPO, that "he was not allowed in the residence," and that "failure to comply with [the PPO] would result in arrest." Deputy Mackeller stated that he and Deputy Busse were on the stoop when defendant started to take a step out of the house, at which point defendant's dog ran out of the home. The deputies commanded defendant to restrain his dog, but the dog freely roamed around outside the house.

Deputy Busse testified that at the doorway he informed defendant that he had been validly served with the PPO, that "he was not supposed to be at the residence," and that he could go to jail if he went back into the house. Deputy Busse discussed the circumstances at the point when defendant opened the door of his home and encountered the deputies, testifying as follows:

> Well, we tried to calm him down. He was still waving his hands around, upset, swearing, telling us to get off the property, and we had to explain to him that, no, we were not going to leave. And we tried to explain the PPO to him which he didn't care to listen [to], so eventually he tried to turn around to go back in the house . . . .[3]

Defendant's sudden attempt to reenter the house triggered the deputies' efforts to arrest defendant. Deputy Busse secured defendant by his arms and started to move him from the porch or stoop. But defendant flailed his arms, tried pulling away, and made his body limp as Deputy Busse attempted to move defendant toward a police cruiser. As defendant fought and refused to comply, the deputies forced defendant to the ground. Deputy Sabo then assisted Deputy Busse in finally securing and arresting defendant.

Defendant was charged with one count of resisting and obstructing a police officer under MCL 750.81d(1). The count pertained solely to defendant's actions in relation to Deputy Busse. At trial, after the prosecution concluded its case-in-chief, defense counsel moved for a directed verdict, arguing that the PPO had not been properly served on defendant and that defendant's arrest

---

testimony suggesting that Deputies Busse and Mackeller spoke to defendant at about the same time through the open window.

[2] Deputy Mackeller testified that defendant "was in the doorway. He never exited the house fully."

[3] Contrary to Deputy Mackeller's testimony, Deputy Busse indicated that defendant had stepped out of the house onto the stoop and then onto the ground. Deputy Busse testified, "In my recollection he had stepped down on the ground."

was unlawful. Counsel further contended that defendant was not given a reasonable opportunity to comply with the PPO. The trial court denied defendant's motion. The court ruled that verbal service of a PPO is authorized by statute. The trial court next found that in viewing the evidence in a light most favorable to the prosecution as required when addressing a motion for directed verdict, there was sufficient evidence to allow the jury to decide whether verbal service was accomplished. The court did suggest that defendant's belligerent, disruptive, and uncooperative behavior could excuse any failure to fully comply with the steps necessary to verbally serve the PPO. The trial court noted that defendant "had been given notice that he had to leave or could not go back into the house." The court indicated that defendant's conduct in trying to reenter the house could indeed constitute a violation of the PPO subjecting defendant to arrest, considering that there was evidence that defendant was put on notice that he would be arrested if he tried to go back inside the home. The trial court opined that the notice was legally accurate and lawful. The court continued:

> Then when hands are placed on him, he's arguably taken into custody, and a reasonable jury could find that, he then physically resisted the attempt or attempts to take him into custody. That could be viewed as obstructing or resisting the deputy's efforts to take him into custody for a violation of the [PPO].

The trial court then observed that a defendant who is verbally informed of a PPO must be given an opportunity to immediately leave, and if he or she fails to do so, the defendant is subject to immediate arrest. The court concluded that under the evidence presented by the prosecution in this case, a jury could determine that defendant was given an opportunity to leave and failed to do so in violation of the PPO and that defendant committed the charged offense.

Defendant proceeded to testify on his own behalf regarding the details of the incident. Defendant's complete recollection was a bit unclear, but he maintained that the conduct which the deputies perceived to be a retreat into the residence was actually defendant's attempt to restrain his dog in compliance with Deputy Busse's command. Defendant testified that he snapped his fingers to direct the dog back into the house and that Deputy Busse then suddenly grabbed his arms, carried or dragged him, and threw him onto the hood of the patrol car. Defendant claimed that Deputy Busse told him to stop resisting while both of defendant's hands were already behind his back. Defendant denied all allegations that he resisted arrest.

After the jury convicted defendant, he moved for a new trial on two grounds. First, defendant argued that he was entitled to a new trial because the verdict was against the great weight of the evidence. Second, defendant contended that he was entitled to a new trial because the jury instructions failed to define "legal arrest" and "probable cause." That contention was accompanied by an argument that defense counsel was ineffective for failing to request jury instructions defining those terms.

Ruling from the bench after oral argument, the trial court found that there was sufficient evidence that defendant knew or had reason to know that Deputy Busse was serving the PPO on defendant and that the PPO prohibited defendant from entering onto or remaining on the property where Brown and defendant resided. The trial court further found that there was sufficient evidence that defendant was advised that he could not remain on the premises and faced arrest if he did not abide by the PPO and that when defendant did not leave and tried to reenter the home,

the deputies had probable cause to arrest him for a violation of the PPO. The trial court noted that it was defendant's defiance in not immediately leaving and then trying to retreat into the home that justified the arrest.

The trial court then addressed the alleged deficient jury instructions, ruling that the instructions given to jurors addressed the concept of "reasonable cause" needed by an officer to arrest someone who is in violation of a PPO and that the instructions also defined "reasonable cause." The trial court further ruled that the jury instructions sufficiently set forth the rules and elements of the offense of resisting and obstructing an officer.

Defendant now appeals by right.

III. ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to support the conviction because no reasonable factfinder could conclude beyond a reasonable doubt that he improperly resisted and obstructed the deputies given that there was no probable cause to arrest defendant. Defendant contends that the trial court erred by determining that there was evidence that he disobeyed a command to leave the *premises*. Defendant further maintains that assuming that verbal service of the PPO was accomplished and that the command not to reenter the residence was lawful, the evidence demonstrated that Deputy Busse arrested defendant *before* he actually reentered the house, at which point there was no probable cause that he failed to comply with the lawful command.

In *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020), this Court articulated the well-established principles that govern our review of a sufficiency argument:

> This Court reviews de novo whether there was sufficient evidence to support a conviction. In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. All conflicts in the evidence must be resolved in favor of the prosecution. [Quotation marks and citations omitted.]

Defendant was convicted of resisting and obstructing a police officer in violation of MCL 750.81d(1), which provides:

Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.[4]

For purposes of a charge under MCL 750.81d(1) and as relevant to this case, the prosecution must prove beyond a reasonable doubt (1) that the defendant resisted or obstructed a police officer, (2) that the defendant knew or had reason to know that the person whom the defendant resisted or obstructed was a police officer performing his duties, and (3) that the officer acted lawfully, i.e., that the officer gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act. See *People v Quinn*, 305 Mich App 484, 491-492; 853 NW2d 383 (2014); M Crim JI 13.1; see also *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012). And in *People v Chapo*, 283 Mich App 360, 366-367; 770 NW2d 68 (2009), this Court observed:

We also reject defendant's claim that Officer Hoffman's testimony established that he lacked probable cause to arrest defendant for obstruction. A police officer may make an arrest without a warrant if there is probable cause to believe that a felony was committed by the defendant, or probable cause to believe that the defendant committed a misdemeanor in the officer's presence. Probable cause is found when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe that an offense had been or is being committed. The standard is an objective one, applied without regard to the intent or motive of the police officer. [Quotation marks and citations omitted.]

In this case, the deputies arrested defendant for a violation of the PPO condition that prohibited defendant from "entering onto property where [Brown] lives." A PPO "is effective and immediately enforceable anywhere in this state after being signed by a judge." MCL 600.2950(9). If an individual subject to a PPO has not been served, a law enforcement officer may, as indicated earlier, "advise the individual restrained or enjoined of the existence of the [PPO], the specific conduct enjoined, the penalties for violating the order, and where the individual restrained or enjoined may obtain a copy of the order." MCL 600.2950(22). And MCL 600.2950(22) further provides:

If the individual restrained or enjoined has not received notice of the personal protection order, the individual restrained or enjoined must be given an opportunity to comply with the personal protection order before the law enforcement officer makes a custodial arrest for violation of the personal protection order. *The failure to immediately comply with the personal protection order is grounds for an immediate custodial arrest.* [Emphasis added.]

---

[4] The term "obstruct" is statutorily defined as "includ[ing] the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

In this case, under the preceding passage from MCL 600.2950, if defendant received proper notice of the PPO, the deputies had the authority to arrest him upon a failure by defendant to immediately comply with the PPO's condition that prohibited his presence on the property.

Another statutory provision that is relevant to our analysis is MCL 764.15b, which provides, in pertinent part:

> (1) A peace officer, without a warrant, may arrest and take into custody an individual when the peace officer has or receives positive information that another peace officer has *reasonable cause* to believe all of the following apply:
>
> (a) A [PPO] has been issued under . . . MCL 600.2950 . . . .
>
> (b) The individual named in the [PPO] is violating or has violated the order. An individual is violating or has violated the [PPO] if that individual commits 1 or more of the following acts the order specifically restrains or enjoins the individual from committing:
>
> * * *
>
> (iii) Entering onto premises.  [Emphasis added.]

We note the Legislature's use of the term "reasonable cause" and not "probable cause."

Defendant presents, in part, a somewhat hyper-technical argument that simply has no merit. Defendant first notes that the trial court indicated at the hearing on the motion for new trial that it would have granted the motion for directed verdict had there not been evidence that defendant was advised "not to remain on the *premises*" and that "he remained on the *premises*" and tried to reenter the home, which gave the deputies probable cause to arrest him.  (Emphasis added.)  Continuing with this line of thought, defendant asserts that there was no evidence that the deputies commanded defendant to leave the "premises"; rather, the deputies demanded that defendant leave the "residence."  Defendant maintains that there is a legal distinction between the terms "premises" and "residence," in that a "residence" solely encompasses a dwelling structure on a lot—here the house—and a "premises" includes not only the dwelling on a lot but the whole lot or plot of land itself.  Defendant argues that the trial court incorrectly treated the terms as being interchangeable. In light of the fact that there was no evidence that he was ordered to leave the *premises*, defendant claims that there was no proof, nor could there be proof, that he failed to comply with a command to leave the *premises* or that he was arrested for failing to leave the *premises*.

Defendant then argues that Deputy Sabo testified that Deputy Busse arrested defendant *before* informing defendant that he could not reenter his house and that he was arrested for violating the PPO because he half-turned and reached toward the front doorknob.[5]  Defendant

---

[5] Deputy Sabo did testify that "[a]t one point [defendant] turned around and appeared to be trying to re-enter the home and that is when Deputy Busse secured his arm and informed him he wasn't allowed to go back into the home due to the PPO."

notes the testimony by Deputies Busse and Mackeller that defendant was arrested because he failed to abide by a lawful command not to reenter the house. Defendant proceeds to argue that because he did not actually get back inside the house, there was no probable cause to arrest him because he effectively complied with the command not to reenter the house. Defendant states that a charged person must know or have reason to know that a police officer is lawfully performing his duties, and defendant further maintains as follows:

> [Defendant's] knowledge of the deputies' actions would be reliant upon the grounds provided for his arrest. The justification provided by the deputies for [defendant's] arrest was an attempt to reenter his house. The trial court adds a justification after-the-fact that [defendant] was arrested for refusing to leave the premises. An after-the-fact justification is distinct from the reasonable cause in the moment; [whether] the arresting officer had reasonable cause to believe at the time of arrest is the pertinent subject of our inquiry. The deputies did not have probable cause to arrest [defendant] on the suspicion that he was about to reenter the house. An officer achieves probable cause to arrest when the crime is committed in the officer's presence. Furthermore, the deputies did not arrest [defendant] for failing to leave the premises because they never gave that command and the reason Busse arrested [defendant] is clear: He attempted to reenter his house. [Quotation marks and citation omitted.]

Defendant concludes that because the deputies acted unlawfully as a matter of law when they arrested him, he had the right to resist the unlawful arrest.

Defendant's use of semantics to create alleged error is not persuasive, and untangling defendant's confusing arguments merely causes hesitation in concluding that reversal is entirely unwarranted. Initially, we note that defendant does not argue that the evidence was insufficient to show that he resisted and obstructed the deputies, nor does defendant contend that the evidence was insufficient to demonstrate that he knew that the deputies were police officers performing their duties. Defendant's sole focus is on the element requiring the deputies to have acted lawfully in placing defendant under arrest, with defendant arguing that probable cause to arrest him was lacking.

It is important to keep in mind the following principle expressed by our Supreme Court in *People v Cipriano*, 431 Mich 315, 342; 429 NW2d 781 (1988):

> An arresting officer's subjective characterization of the circumstances surrounding an arrest does not determine its legality. Rather, probable cause to justify an arrest has always been examined under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.

We acknowledge that this principle must be considered in the context of a charge of resisting and obstructing an officer. There was evidence that after Deputies Busse and Mackeller gave defendant verbal notice of the PPO at the window of the home, told him that the PPO prohibited defendant from remaining or staying at the residence, and informed him that he would be arrested if he violated the PPO, defendant uttered profanities, slammed the window shut, closed

the blinds, and ignored knocks on the window by Deputy Busse. We believe that under those circumstances, and as early as that point in time, there was sufficient evidence that defendant failed to immediately comply with the PPO, providing, upon objective examination, reasonable cause for an immediate arrest, even if the deputies might have thought differently. Viewed in a light most favorable to the prosecution, the evidence regarding communications at the window showed that defendant knew he could not stay at the house under the PPO and knew that he could be arrested if he did so, yet he initially ignored the deputies. We also conclude that there was sufficient evidence to additionally establish reasonable cause to arrest defendant on the basis of his subsequent actions at the front doorway of the house.

Defendant's stance, apparently, is that because the deputies did not tell him that he had to leave the *premises* but only that he had to leave the *residence*, he could only have been lawfully arrested for failing to leave the *residence*, otherwise the requisite notice would be lacking.[6] But defendant seemingly fine tunes this position even more so by claiming that he could only potentially be lawfully arrested for reentering the residence—and not for merely staying in the house—because Deputy Busse expressly commanded him not to reenter the house and testified that he arrested defendant solely because he tried to reenter the residence. And defendant asserts that the arrest was ultimately unlawful because Deputy Busse's command came *after* defendant attempted to make reentry, and because, regardless, defendant did not actually succeed in reentering the house.

We first note that, aside from commands not to reenter the house, there was testimony that defendant was additionally informed at the front doorway that he absolutely had to leave the house or be in violation of the PPO, subjecting him to arrest. Evidence that defendant attempted to reenter the house also constituted evidence that defendant decided against leaving the residence, and Deputy Mackeller testified that defendant never even fully left the house. We find a bit nonsensical defendant's argument that there was no violation of Deputy Busse's command not to reenter the house because defendant was stopped before being able to effectuate reentry. The attempt itself reflected a violation of the PPO and disobedience to Deputy Busse's command not to reenter the residence. The only reason defendant was unsuccessful in reentering the house was because Deputy Busse stopped him from doing so; the intent to reenter existed. Moreover, regardless of the timing of the command not to reenter the home, and before he ever stepped outside, turned around, and headed back towards the door, defendant had stood in the doorway and defiantly challenged the deputies despite orders to leave the house or face arrest, which constituted sufficient evidence that defendant knowingly failed to immediately comply with the PPO, thereby providing reasonable cause for an immediate arrest.

In sum, viewing the evidence in a light most favorable to the prosecution and resolving all evidentiary conflicts in the prosecution's favor, we hold that there was sufficient evidence that the deputies made lawful commands, were making a lawful arrest, i.e., an arrest based on reasonable

---

[6] There can be no reasonable dispute that a failure to leave the residence would also constitute a failure to leave the premises or the property.

cause, and were otherwise performing lawful acts. Accordingly, there was sufficient evidence for the jury to find that defendant did not have a right to resist or obstruct the deputies.

## IV. GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that he is entitled to a new trial because the verdict was against the great weight of the evidence and constituted a miscarriage of justice, considering that defendant was illegally arrested on his porch absent probable cause. Defendant essentially renews his sufficiency arguments in the context of a great-weight claim. See *People v Brown*, 239 Mich App 735, 746 n 6; 610 NW2d 234 (2000) (recognizing sufficiency and great-weight arguments as "two separate questions" and rejecting a great-weight challenge that merely paralleled the defendant's flawed sufficiency argument).

Moreover, defendant has failed to demonstrate that the evidence showing that he knowingly violated the PPO and was subject to lawful arrest, as alluded to above, contradicted indisputable physical facts or law, was patently incredible, defied physical realities, was so inherently implausible that a reasonable juror could not believe the evidence, or was so seriously impeached that it was deprived of all probative value. See *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998). Because there were no exceptional circumstances as necessary to support a great-weight argument, and because any issues regarding the credibility of witnesses and the resolution of conflicting testimony were for the jury to determine and not this Court, reversal for a new trial is unwarranted. *Id.* at 642-643. We conclude that the evidence did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. See *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003).

## V. JURY INSTRUCTIONS AND INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that the trial court erred by neglecting its duty to properly instruct the jury with respect to whether Deputy Busse had probable cause to arrest defendant and whether defendant's arrest was legal, which is an element of resisting and obstructing a police officer.

In this case, defense counsel repeatedly expressed satisfaction with the jury instructions, thereby waiving any instructional issue on appeal. See *People v Kowalski*, 489 Mich 488, 503-504; 803 NW2d 200 (2011) (explaining that explicit and repeated approval of an instruction constitutes waiver). Defendant, however, bootstraps a claim of ineffective assistance of counsel, arguing that counsel was ineffective for failing to object to the trial court's instructional errors or shortcomings.

Whether counsel was ineffective presents a mixed question of fact and constitutional law, and factual findings are reviewed for clear error, whereas questions of law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court recited the principles that govern a claim of ineffective assistance of counsel:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made

-10-

errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Quotation marks and citations omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

The trial court instructed the jury consistent with M Crim JI 13.1, which addresses the elements of the offense of resisting and obstructing a police officer, as charged under MCL 750.81d.[7] The trial court then provided jury instructions on PPOs modeled somewhat after M Crim JI 13.5, which pertains to legal acts and duties in the context of a charge of resisting and obstructing an officer, and the provisions in MCL 600.2950. The court instructed the jury as follows:

A personal protection order is a court order that restrains or enjoins an individual from doing certain acts or entering onto or remaining on real property regardless of ownership. A law enforcement officer may without a warrant arrest or take into custody an individual when the law enforcement officer has reasonable cause to believe that an individual is violating or has violated a personal protection order.

A personal protection order has immediate effect when signed by the judge. It is immediately enforceable against the restrained or enjoined individual who has

---

[7] The trial court instructed the jury as follows:

First, that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered Deputy Mark Busse who was a deputy sheriff. Obstruct includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command. The defendant must have actually resisted by what he said or did, but physical violence is not necessary. Second, that the defendant knew or had reason to know that Deputy Mark Busse was a deputy sheriff performing his duties at the time. Third, that Deputy Mark Busse gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act.

notice of the personal protection order. If the restrained or enjoined individual has not previously been given notice of the protection order, a law enforcement agency or officer responding to a call alleging a violation of a personal protection order shall either serve the individual restrained or enjoined with a true copy of the order, or orally advise the individual restrained or enjoined of the existence of the personal protection order, the specific conduct enjoined, the penalties for violating the order, and where the individual restrained or enjoined may obtain a copy of the order.

A law enforcement officer has legal authority to give verbal notice of a personal protection order. An individual given verbal notice must give – must be given an opportunity to comply with the personal protection order before the individual is arrested or taken into custody. The failure to immediately comply is grounds for immediate arrest.

Reasonable cause means having enough information to leave an ordinarily careful person to believe that the defendant has violated the personal protection order. The prosecutor must prove beyond a reasonable doubt that the arrest was legal and that the law enforcement officer acted within his legal authority. It is up to you to determine whether the officer's actions were legal according to the law . . . .

Defendant argues that the jury instructions were inadequate because they did not define the terms "legal arrest" or "probable cause." Defendant maintains that the terms should have been defined immediately after the jury was instructed on the third element of resisting and obstructing a police officer, i.e., that the deputies acted lawfully. Defendant contends that the jury needed to consider whether the deputies had probable cause to believe that defendant committed a crime in reentering his residence. Defendant asserts:

If the jury received the proper instructions, they could not have concluded the deputies had probable cause to arrest [defendant] before [defendant] committed the crime of reentering his residence. The instructions do not allow for a legal arrest if the person has not yet committed a crime.

The deputies did not have probable cause to arrest [defendant] *before* he entered his house, and his arrest was illegal. [Emphasis in original.]

We conclude that the extensive instructions given by the trial court quoted above effectively defined the nature of what constitutes a "legal arrest" in the context of a PPO violation and a charge of resisting and obstructing an officer. And those same instructions effectively informed the jury regarding the meaning of "probable cause," although the instructions referenced "reasonable cause." Indeed, MCL 764.15b(1), which specifically concerns warrantless arrests for PPO violations, employs the term "reasonable cause" instead of "probable cause." The trial court defined for the jury "reasonable cause" in the instructions. Moreover, defendant's continuing argument that probable cause to arrest him for a PPO violation could only have been established by evidence that he actually reentered the house lacks merit for the reasons discussed earlier in regard to the sufficiency claim.

-12-

This Court does not impute error to defense counsel for failure to object to jury instructions when the instructions themselves are not erroneous. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Therefore, defense counsel did not render ineffective assistance by failing to object to the instructions or by failing to request certain instructions. We hold that because defendant has not established that defense counsel's performance fell below an objective standard of reasonableness, his claim of ineffective assistance fails.

We affirm.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Kathleen A. Feeney